IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO.   2:18-CR-249-WKW-WC |
| | ) | |
| WILLIAM E. HENRY, | ) | |
| PUNURU J. REDDY, and | ) | |
| NICOLE D. SCRUGGS | ) | |

**RESPONSE IN OPPOSITION TO THE DEFENDANTS' PRE-TRIAL MOTIONS**

Comes now the United States of America, by and through Louis V. Franklin, Sr., United

States Attorney for the Middle District of Alabama, and submits this response to Defendant

William E. Henry's: (1) motion to dismiss the superseding indictment, Doc. 72; (2) second

motion for a bill of particulars, Doc. 73; and (3) motion for disclosure of the specific documents

the government intends to introduce in its case-in-chief, Doc. 67.[1]  The government also

responds to Defendant Punuru J. Reddy's: (1) motion to dismiss for improper joinder, Doc. 66;

(2) motion for bill of particulars; (3) motion to dismiss counts 16 and 18 as multiplicious [sic],

Doc. 69; and (4) motion to strike surplusage, Doc. 70.

**I. PROCEDURAL HISTORY**

**A.     Indictment and Henry's Not Guilty Plea**

On May 31, 2018, the grand jury returned a 15-count indictment against Defendant

Henry.  Doc. 1.  The indictment generally alleged that Henry, through a company he owned,

MyPractice24, Inc. (MyPractice24), conspired to pay and did pay medical kickbacks, conspired

to commit and did commit health care fraud, and conspired to commit money laundering.

---

[1]Henry also filed a motion for juror questionnaires and to participate in voir dire.  Doc. 71.  On September 17, 2018, the Court ordered that the government respond separately to that motion.  Doc. 74.  Accordingly, the government will file a separate response to that motion by the deadline set in the Court's September 17, 2018 order.

All of the charges in the original indictment related to Henry's business dealings with a Montgomery, Alabama medical practice—Family Practice, previously owned by a physician, Gilberto Sanchez. Specifically, the indictment alleged that Henry's company entered into an agreement with Family Practice. Under that agreement, MyPractice24 would provide chronic care management services for Medicare Part B beneficiaries who were patients of Sanchez's practice. According to the indictment, Henry paid kickbacks to Sanchez and to others to induce referrals of Family Practice patients to Henry's company. Additionally, Henry facilitated Sanchez's paying kickbacks to patients in the form of waived copayment (copay) obligations.[2]

On June 7, 2018, Henry appeared before a magistrate judge for an arraignment. Doc. 6. At the conclusion of that hearing, Henry pleaded not guilty to each charge. Id.

B.      Henry's Initial Pretrial Motions

On June 26, 2018, Henry filed a motion to dismiss the indictment. Doc. 19. In that motion, Henry argued that "[t]he indictment and each count thereof are so vague, indefinite, uncertain and confusing as to fail to adequately advise Mr. Henry of the offense with which he is charged and to deny Mr. Henry due process of law in violation of the Fifth and Sixth Amendments." Id. at 1, ¶ 2.

Also on June 26, 2016, Henry filed a motion for a bill of particulars. Doc. 20. In that motion, Henry made 45 specific requests for information. See id. at 1–6, ¶¶ 1–45.

On July 10, 2018, the government responded in opposition to Henry's motions. Doc. 28.

C.      Superseding Indictment and Not Guilty Pleas

On July 24, 2018, the grand jury returned a superseding indictment. Doc. 29. The superseding indictment added defendants Reddy and Nicole D. Scruggs. As Defendant Scruggs

---

[2]In its response to Henry's initial pretrial motions, the government summarized the charges in the original indictment. See Doc. 28 at 1–4. The government does not repeat that summary here.

has not filed any pretrial motions, the following does not summarize the allegations about Scruggs or the charge levied against her.

The superseding indictment's introductory sections are substantially identical to the introductory sections of the original indictment. Compare Doc. 1 at 1–8, ¶¶ 1–27, with Doc. 29 at 1–9, ¶¶ 1–29. The introductory portions of the superseding indictment contain only the following new allegations: (1) paragraph 4 of the superseding indictment introduces Defendant Reddy as a Decatur, Alabama internal medicine physician and owner of his own practice (described in the superseding indictment as "Reddy Practice"); (2) paragraph 5 introduces Defendant Scruggs as a Huntsville, Alabama internal medicine physician; and (3) paragraph 7 alleges that, in or about July of 2015, Henry formed MyPractice24 by filing articles of incorporation with the Alabama Secretary of State in Montgomery. Doc. 29 at 2, ¶¶ 4–5, 7.

After the introductory sections, the superseding indictment contains a section described as "FAMILY PRACTICE COUNTS." Id. at 9–33, ¶¶ 28–114. This section contains 14 counts, each of which relates to Henry's business relationship with Sanchez and Family Practice. See id. Importantly, each of counts 1 through 14 existed in the original indictment. See id.; see also Doc. 1 at 9–33, ¶¶ 28–113. The only difference between counts 1 through 14 of the superseding indictment and counts 1 through 15 of the original indictment is that the superseding indictment does not contain the original indictment's count 3. Compare Doc. 1 at 26, ¶ 87, with Doc. 29 at 26, ¶ 88.

Next, count 16 alleges that Henry and Reddy entered into a conspiracy akin to the conspiracy entered between Henry and Sanchez. See Doc. 29 at 33–39, ¶¶ 115–37. The count charges Henry and Reddy with conspiring to defraud the United States and to violate the Anti-

Kickback Statute, see 42 U.S.C. § 1320a-7b(b), in violation of 18 U.S.C. § 371. Id. at 33–34, ¶ 116.

The manner and means section alleges that, in or about August of 2015, Henry and Reddy entered into an agreement through which Henry's company would provide chronic care management services to Reddy's patients. Id. at 35, ¶ 122. For doing so, Reddy Practice would pay MyPractice24 $22.60 per patient per month. Id. According to the superseding indictment, Henry advised Reddy to "'write off'" copay obligations if patients refused to pay out-of-pocket costs associated with chronic care management. Id. at 35, ¶ 123. Similarly, Henry instructed Reddy to refrain from submitting chronic care management claims to the Centers for Medicare and Medicaid Services (CMS) until well into the next calendar year so as to allow patients to pay their deductibles on other services. Id. at 35, ¶ 124. Thereafter, MyPractice24 began performing under the contract. Id. Around the same time, Reddy instructed his billing employees to waive copay obligations for chronic care management services any time a patient complained about a bill. Id. at 36–37, ¶¶ 125–29. Likewise, for most of 2017, Reddy did not submit chronic care management claims to CMS. Id. at 37, ¶ 130. During that time period, MyPractice24 did not submit bills to Reddy Practice. Id. At the conclusion of the manner and means section, the superseding indictment explains that Henry and Reddy conspired to: (1) defraud the United States by declining to collect copays and then failing to inform CMS of the waived copays when submitting claims; (2) pay kickbacks to Reddy in exchange for referrals, with such kickbacks coming in the form of deferred billing during 2017; and (3) pay kickbacks to Reddy Practice's patients in the form of "systematically waived copay obligations for patients who did not have secondary insurance." Id. at 37–38, ¶¶ 131–33. The superseding indictment goes on to allege various overt acts in furtherance of the conspiracy. Id. at 38–39, ¶¶ 134–37.

Count 17 charges Henry and Scruggs with having entered into a similar conspiracy as those charged in counts 1 and 16.  Id. at 39–45, ¶¶ 138–67.  Then, count 18 alleges that all three defendants conspired together.  Id. at 45–48, ¶¶ 168–81.

On August 8, 2018, the Court arraigned each defendant on the superseding indictment. See Doc. 49; Doc. 50; Doc. 51.  The defendants pleaded not guilty to all counts.  See id.

**D.      Pretrial Motions**

On September 14, 2018, Henry and Reddy filed the above-described pretrial motions. Doc. 66; Doc. 67; Doc. 68; Doc. 69; Doc. 70; Doc. 72; Doc. 73.

On September 21, 2018, the government filed a motion for leave to dismiss count 18 of the superseding indictment.  Doc. 75.

## II.  RESPONSE TO HENRY'S MOTIONS

As noted, Henry filed: (1) a motion to dismiss the superseding indictment, Doc. 72; (2) a motion for a bill of particulars, Doc. 73; and (3) a motion requesting that the Court order the government to submit to the defendant a list of documents it plans to seek to admit at trial, Doc. 67.  The following addresses each motion.

**A.      Response to Henry's Motion to Dismiss the Superseding Indictment**

The first 10 paragraphs of Henry's motion to dismiss the superseding indictment are an almost verbatim recitation of Henry's motion to dismiss the original indictment.  Compare Doc. 19 at 1–3, ¶¶ 1–10, with Doc. 72 at 1–4, ¶¶ 10.  Paragraphs 11 and 12 of Henry's motion to dismiss the superseding indictment are new—each is also identical to the other.  Doc. 72 at 4–5, ¶¶ 11–12.  Both paragraphs ask that the Court dismiss count 16 because the superseding indictment "does not allege that Ed Henry in any way had control over how Dr. Reddy billed the Reddy Practice patients for out-of-pocket costs for chronic care management services."  Id.  This

argument is legally indistinguishable from the arguments Henry made in his first motion to dismiss. Compare id., with Doc. 19 at 2, ¶ 6.

Because Henry's latest motion to dismiss does not present any new legal argument, the government incorporates by reference its response to Henry's original motion to dismiss and asks that the Court construe those arguments as being responsive to Henry's pending motion to dismiss. See Doc. 28 at 5–26.

**B.      Response to Henry's Motion for a Bill of Particulars**

Similarly, the first 44 paragraphs of Henry's latest motion for a bill of particulars are nearly identical to the paragraphs of Henry's original motion for a bill of particulars. Compare Doc. 73 at 1–7, ¶¶ 1–44, with Doc. 20 at 1–6, ¶¶ 1–45. The current motion contains 15 new requests for information. See Doc. 73 at 7–9, ¶¶ 45–59. Each new request relates to one of the new allegations in the superseding indictment. See id. Henry does not, however, include any new legal argument to support these new requests. Previously, the government argued that Henry's first motion for a bill of particulars was legally deficient. Doc. 28 at 26–31. Those legal arguments are applicable to Henry's more recent motion. Accordingly, the government incorporates by reference those arguments and asks that the Court construe them as being responsive to Henry's pending motion for a bill of particulars. See id.

**C.      Response to Henry's Motion for Disclosure of Potential Trial Exhibits**

Henry's third motion is one asking the Court to order that the government— approximately five months before the trial is set to begin—identify the documents it intends to use during its case-in-chief. Doc. 67. In support of this request, Henry notes that the government has provided a large volume of discovery, thus making it difficult for him to adequately prepare for trial. See id.

In making this request, Henry relies on Rule 16(a)(1)(E)(ii) of the Federal Rules of

Criminal Procedure. Fed. R. Crim. P. 16(a)(1)(E)(ii). That provision requires that the

government permit the defendant "to inspect and copy" all documents "the government intends

to use . . . in its case-in-chief at trial." Id. The rule does not require the government to segregate

the documents it intends to introduce at trial from those it does not intend to introduce.

Based on the rule's plain language, the government has fulfilled its obligations. As

Henry notes, the government has provided to Henry every document it acquired during its

investigation of Henry and his business dealings with Sanchez, Reddy, Scruggs, other

physicians, and a laboratory testing company. Some of those documents pertain to charges in the

superseding indictment. Some do not. There can be no doubt, though, that within the 80,000

pages of documents Henry has received are the materials the government will introduce at trial.

Henry suggests otherwise. In doing so, he reads into Rule 16 a requirement that plainly is

not there. Confronted with similar arguments, other district courts within this circuit have

previously considered and rejected defendants' invitations to augment Rule 16(a)(1)(E)(ii). For

example, in United States v. Scrushy, No. CR-03-BE-530-S, 2004 WL 483264 (N.D. Ala. Mar.

3, 2004), the defendant argued that the government had "produced so much discovery that the

defendant [was] handicapped in attempting to go through all of it unless the Government

identifie[d] and specifie[d] the particular documents it intends to use in its case-in-chief." Id. at

*2. The court denied the motion. In doing so, it explained,

> the obligation imposed by Rule 16 is one of discovery, to make certain categories
> [of] documents available to the defense. The rule does not impose a duty on the
> Government to tip its hand prematurely by requiring it to give the defendant a
> roadmap of its strategy. The act of categorizing documents under Rule 16 for the
> defendant necessarily reveals the Government's strategic view of the significance
> of each document—whether it is one pertinent to an anticipated defense or one the
> Government itself intends to use. The rule does not require that outcome. Although

it requires an exchange of information, it does not open the door to discovery of strategy.

Id. at *3. Subsequently, other district courts within the circuit adopted the reasoning of the Scrushy court. See United States v. Martin, No. 8:17-cr-301-T-24-AAS, 2018 WL 3617316, *1 (M.D. Fla. May 21, 2018) ("Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure requires the Government to make available certain categories of documents to a defendant upon request 'to inspect and copy,' but it contains no requirement for the Government to otherwise identify particular evidence within what it produces."); United States v. Perraud, No. 09-60129-CR, 2010 WL 228013, *9 (S.D. Fla. Jan. 14, 2010) ("[T]he clear language of Rule 16(a)(1) does not require the Government to identify which documents fall in each category set forth in Subsection (E)—it only requires the production of documents responsive to any category." (quotation marks and alterations omitted)); United States v. Carranza, No. 1:05-CR-197-4-TWT, 2007 WL 2422033, *3 (N.D. Ga. Aug. 21, 2007) ("The language of Rule 16(a)(1)(E) . . . does not require the government to make specific identification of its case-in-chief documents separately from the other two categories of documents required to be produced.").

Henry cites none of these within-circuit cases. Rather, he supports his argument by relying on three older district court decisions from other circuits. See United States v. Turkish, 458 F. Supp. 874, 882 (S.D.N.Y. 1978); United States v. Poindexter, 727 F. Supp. 1470, 1484 (D.D.C. 1989); United States v. Upton, 856 F. Supp. 727, 746 (E.D.N.Y. 1994). Henry fails to mention that subsequent decisions have criticized that trio of cases as being ungrounded in any provision of the Federal Rules. See United States v. Nachamie, 91 F. Supp. 2d 565, 569 (S.D.N.Y. Jan 14, 2000) ("Upton fails to ground its conclusion in the language of Rule 16(a)(1) or binding case law . . . . neither Turkish nor Poindexter provide adequate support for their holdings."); see also Carranza, 2007 WL 2422033 at *3; Perraud, 2010 WL 228013 at *9.

Similarly discontent with these disclosures, Henry suggests that because the government has produced such a large volume of discovery, it should be required to go beyond the rule's dictates and identify for Henry the materials the government intends to use. In effect, Henry would penalize the government for its forthrightness in sharing virtually all of the contents of its file. But, had the government done otherwise, Henry might be complaining of the government's failure to meet its discovery obligations.

Here, the Court should follow the conclusions of its fellow Eleventh Circuit district courts and decline to read into Rule 16 a requirement that is plainly absent. To do otherwise would, as the Scrushy court noted, force the government to reveal its trial strategy months before the trial is to begin. See 2004 WL 483264. Likewise, it would prematurely hamstring the government's ability to alter its trial strategy by adding exhibits previously not deemed important. See id. Also worth considering, granting Henry the relief he seeks would leave the government, in future cases, with an impossible dilemma—either produce everything it has and run the risk of having to prematurely identify its exhibits or produce only relevant materials and run the risk of failing to comply with its constitutional discovery obligations.

Should the Court deny Henry's motion, the government will, nevertheless, provide an exhibit list to Henry at an appropriate time in the weeks immediately preceding trial. Moreover, the government will assist Henry, as needed, with identifying relevant materials. The Government has offered to do this since the return of the first indictment. Should Henry nevertheless feel that he cannot review all of the discovery before the February 4, 2019 trial, then he should simply request a continuance. See United States v. Jordan, 316 F.3d 1215, 1253 (11th Cir. 2003).

### III. RESPONSE TO REDDY'S PRETRIAL MOTIONS

Turning to Reddy's pretrial motions, Reddy filed: (1) a motion to dismiss for improper joinder or in the alternative sever for trial, Doc. 66; (2) a motion for a bill of particulars, Doc. 68; (3) a motion to dismiss counts 16 and 18 as multiplicious [sic], Doc. 69; and (4) a motion to strike surplusage, Doc. 70. The following addresses each motion in turn.

**A.      Response to Reddy's Motion to Dismiss for Improper Joinder or to Sever for Trial**

As explained below, the superseding indictment properly joins Reddy, Henry, and Scruggs pursuant to Rule 8(b) of the Federal Rules of Criminal Procedure. See Fed. R. Crim. P. 8(b). Moreover, Reddy will not be prejudiced by this joinder. As a result, Reddy is neither entitled to a dismissal or a severance.

**1.      The Defendants were Properly Joined**

Rule 8 of the Federal Rules of Criminal Procedure governs the joinder of offenses or defendants. See Fed. R. Crim. P. 8. Subsection (b) of Rule 8 allows the charging of "2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transaction, constituting an offense or offenses." Fed. R. Crim. P. 8(b).

Rule 8 reflects a "preference in the federal system for joint trials of defendants who are indicted together." Zafiro v. United States, 506 U.S. 534, 537, 113 S. Ct. 933, 937 (1993). This preference exists because joint trials "serve important interests," namely "they reduce the risk of inconsistent verdicts and the unfairness inherent in serial trials, lighten the burden on victims and witnesses, increase efficiency, and conserve scarce judicial resources." United States v. Lopez, 649 F.3d 1222, 1233 (11th Cir. 2011). For this reason, Rule 8 "is broadly construed in favor of initial joinder." United States v. Davis, 773 F.2d 1180, 1181 (11th Cir. 1985).

"The question of whether initial joinder is proper under Rule 8(b) is to be determined

before trial by examination by the trial court of the allegations stated on the face of the

indictment." United States v. Weaver, 905 F.2d 1466, 1476 (11th Cir. 1990).  When addressing

a claim of misjoinder, the "pertinent focus" is "upon whether the terms of Rule 8(b) have been

met, that is to say, whether the offenses arose from the same series of acts or transactions."

United States v. Kopituk, 690 F.2d 1289, 1313 (11th Cir. 1982) (quotation marks omitted).  "In

order to constitute a 'series' of acts or transactions under Rule 8(b), there must be 'substantial

identity of facts or participants among the various offenses." Id.  Put differently, "in order to

establish that [defendants] have engaged in the 'same series of acts or transactions' under Rule

8(b) the government must demonstrate that the acts alleged are united by some substantial

identity of facts and/or participants." United States v. Morales, 868 F.2d 1562, 1569 (11th Cir.

1989).  Additionally, the Eleventh Circuit has indicated that, in a case like this one involving

multiple joined conspiracy counts, relevant to the joinder analysis is whether the alleged

conspiracies "overlapped temporally." Weaver, 905 F.2d at 1477.

Applying these principles here, it is clear that the superseding indictment properly joined

Defendants Henry, Reddy, and Scruggs.  Each count is united to the others by "some substantial

identity of facts." See id.  Namely, all of the alleged crimes are specific episodes in an ongoing

series of Henry—through his company, MyPractice24—offering things of value to physicians in

exchange for the physicians referring patients to Henry's company for chronic care management

services and the physicians waiving copay obligations to entice patients to register for the

services provided by Henry's company.  Furthermore, the counts are united by common

participants—specifically, Henry. See id.  That Reddy, Scruggs, and the unindicted co-

conspirator, Sanchez, had no dealings with each other does not, by itself, negate the otherwise common nucleus of facts and participants.

Two other factors are also worth noting. First, the conspiracies alleged in the superseding indictment all occurred during the same 2015 through 2017 time period. Accordingly, the conspiracies overlap temporally. See Weaver, 905 F.2d at 1477. Second, judicial economy principles counsel in favor of a joint trial here. See Lopez, 649 F.3d at 1233. During its case-in-chief, the government will be required to introduce extensive evidence about the Medicare program, chronic care management, and medical billing requirements and procedures. All of this evidence will be necessary for the jury to understand each conspiracy charge. Should Reddy be tried separately from Scruggs and Henry, the government would be required to introduce this extensive and complicated evidence two times—thus requiring the Court to unnecessarily spend more resources than it should resolving this matter.

## 2.     Dismissal Would Not Be an Appropriate Remedy for Misjoinder

Of course, the government contends that the parties are properly joined in the superseding indictment. However, even if misjoinder had occurred, Reddy would not be entitled to the remedy he seeks.

Reddy contends that "Counts 1-15, 16, and 17 were improperly joined and should be dismissed." Doc. 66 at 8. Reddy cites no authority for the proposition that dismissal is the proper remedy for misjoinder. This is likely because, as the Eleventh Circuit has made clear, the remedy for misjoinder under Rule 8(b) is a severance. See United States v. Bryan, 843 F.2d 1339, 1342 (11th Cir. 1988). Accordingly, if misjoinder occurred, the proper remedy would be to sever Reddy from his co-defendants—not to dismiss the superseding indictment.

**3.     Reddy Will Not Be Prejudiced by a Joint Trial**

Even when defendants are properly joined in an indictment pursuant to Rule 8(b), a

severance may still be appropriate.  Rule 14 of the Federal Rules of Criminal Procedure provides

that "[i]f the joinder of . . . defendants in an indictment, an information, or a consolidation of trial

appears to prejudice a defendant or the government, the court may . . . sever the defendants'

trials, or provide any other relief that justice requires."  Fed. R. Crim. P. 14(a).  Importantly,

"Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of

the relief to be granted, if any, to the district court's sound discretion."  Zafiro, 506 U.S. at 538–

39; 113 S. Ct. at 938.

In Zafiro v. United States, the Supreme Court set forth a two-part test for district courts to

apply when ruling on a motion to sever.  At the first step, a court should consider whether the

defendant has shown that he will suffer prejudice as a result of a joint trial.  Id. at 538, 113 S. Ct.

at 938.  The Eleventh Circuit has explained that this first step requires a showing of "specific and

compelling prejudice" requiring a severance.  United States v. Francis, 131 F.3d 1452, 1459

(11th Cir. 1997).  "This is a heavy burden, and one which mere conclusory allegations cannot

carry."  Id. (quotation marks omitted).

If a defendant can satisfy this first step, then the court should consider whether severance

is the proper remedy for the prejudice.  Id. at 539, 113 S. Ct. at 938; see United States v.

Blankenship, 382 F.3d 1110, 1122 (11th Cir. 2004) (explaining that the Zafiro Court "set down a

two-step test for determining whether a defendant is entitled to a new trial due to a district

court's refusal to sever prior to trial or to grant a mistrial once trial has commenced").

Reddy contends that, even if joinder is proper under Rule 8(b), Rule 14(a) entitles him to

a severance.  Doc. 86 at 8.  In support, he argues that "[a] jury will not be able to properly access

[sic] whether Defendant Reddy knowingly and willfully agreed with Henry to violate the Anti-Kickback Act at his practice in Decatur when faced with overwhelming evidence against Henry in support of the fifteen counts arising out of Henry's acts with Sanchez at the Family Practice in Montgomery." Id. Reddy's arguments are "mere conclusory allegations" regarding the jury's possible inability to make an individualized finding of guilt. See Francis, 131 F.3d at 1459. In virtually every multi-defendant trial, the government's evidence is more extensive as to one defendant than as to another. That may wind up being the case here. However, that possibility, standing alone, is not tantamount to "specific and compelling prejudice." See id.[3]

Even if Reddy could satisfy the first step of the Zafiro analysis, he would not be able to show that a severance is appropriate here. Any prejudice could be ameliorated by the Court instructing the jury that it should independently assess each defendant's guilt. Given the presumption that juries follow their instructions, see Zafiro, 506 U.S. at 540, 113 S. Ct. at 939, Reddy's claim for a severance should fall short.

**B.      Response to Reddy's Motion for a Bill of Particulars**

Next, Reddy asks that the Court order the government to provide him with a bill of particulars containing certain facts relating to venue. As an initial matter, venue is "an essential element of the government's proof at trial" and a question for the jury to resolve. United States v. Snipes, 611 F.3d 855, 866–67 (11th Cir. 2010). Pretrial adjudication of the venue question would be inappropriate. Id. at 865–67.

---

[3]Reddy does make some attempt to show "specific" prejudice by noting that Henry is "a former state legislature [sic], tainted with money laundering and associated with drug distribution via Sanchez." Doc. 66 at 9. These statements do not rise to the level of specific and compelling prejudice. First, it is unclear that Henry's position as a legislator will be discussed at trial. Even if that fact was discussed, Reddy fails to explain how it might be prejudicial for him to have associated with a state legislator. Second, the government's evidence will not establish that Henry had anything to do with Sanchez's drug dealing activities. If anything, Sanchez's bad prescribing habits will only come up in the context of a defendant trying to impeach Sanchez's testimony. Because the taint of Sanchez's prescribing habits will not reach Henry, the taint almost certainly will not reach Reddy.

In any event, the indictment sufficiently alleges venue. In July 2015, at the beginning of the conspiracy, Henry and an unindicted co-conspirator, G.C., submitted to the Alabama Secretary of State's Office documents necessary to incorporate MyPractice24. See Doc. 29 at 38, ¶ 135. The Alabama Secretary of State's Office received those documents in Montgomery, within the Middle District of Alabama.

Reddy also requests information concerning counts 16 and 18, arguing that he is "entitled to know how the conspiracy charged in Count 18 may be meaningfully distinguished from the conspiracy he is charged with in Count 16." Doc. 68 at 6. The government has moved to dismiss count 18 of the superseding indictment, Doc. 75, thus mooting this portion of Reddy's motion.

To the extent that Reddy's motion for a bill of particulars could be construed to request additional information concerning the remaining count 16 in isolation, he is not legally entitled to such information because the detailed allegations in the lengthy indictment provide Reddy with sufficient information to avoid surprise at trial and prepare his defense. The government hereby incorporates by reference the arguments set forth in its response to Henry's original motion for a bill of particulars, Doc. 28 at 26–28, other than the timeliness argument, and asks this Court to construe them as responsive to Reddy's pending motion for a bill of particulars.

## C. Response to Reddy's Motion to Dismiss Counts 16 and 18

Reddy's third motion is one to dismiss counts 16 and 18. Doc. 69. Reddy contends that the counts 16 and 18 charged the same offense in two different counts, thus violating the multiplicity doctrine. See id. at 4. Subsequently, the government filed a motion for leave to dismiss count 18. The government contends that the granting of this motion and the subsequent dismissal of count 18 will render moot Reddy's motion. The government has consulted with

Reddy's attorney on this matter and it is the government's understanding that Reddy's attorney

consents to the motion being denied as moot in light of the dismissal of count 18.

**D.      Response to Motion to Strike Surplusage**

Reddy's fourth motion asks the Court to strike from the first, second, and third

paragraphs of the introductory section background information about Sanchez, the unindicted co-

conspirator who previously practiced medicine in Montgomery.  Doc. 70.  The following

describes that which Reddy wants stricken and explains why the Court should deny Reddy's

motion.

**1.      The Language at Issue and Reddy's Argument**

The language Reddy asks the Court to strike is as follows:

> 1.      From an unknown date and continuing until in or about August of
> 2017, Gilberto Sanchez was a primary care physician licensed to practice medicine
> in Alabama.  On or about November 28, 2017, Sanchez pleaded guilty to:
> (1) conspiring to distribute controlled substances, in violation of Title 21, United
> States Code, Section 846; (2) health care fraud, in violation of Title 18, United
> States Code, Section 1347; and (3) money laundering, in violation of Title 18,
> United States Code, Section 1957(a).  Sanchez is not charged in this superseding
> indictment.
>
> 2.      From an unknown date and continuing until in or about 2013,
> Sanchez was a co-owner of a medical practice located at and near 4143 Atlanta
> Highway, Montgomery, Alabama.  The practice's legal name was "Shepherd A
> Odom, MD, PC."  However, the practice operated under the name "Family
> Practice."  From in or about 2013 through in or about 2017, Sanchez was the sole
> owner of Family Practice.
>
> 3.      From an unknown date and continuing until on or about August 1,
> 2017, Sanchez practiced primary care medicine at Family Practice.  During that
> period, Sanchez employed other primary care providers (consisting of physicians
> and certified registered nurse practitioners) who also practiced family medicine at
> Family Practice.  The practice, through its various physicians and certified
> registered nurse practitioners, provided primary care to over 9,000 unique patients.
> On a monthly basis, Family Practice was among the busiest primary care practices
> in the Montgomery area.

Doc. 29 at 1–2, ¶¶ 1–3. As Reddy notes, these paragraphs are incorporated into count 16—the count charging Reddy and Henry with conspiring to violate the Anti-Kickback Statute and to defraud the United States. See id. at 33, ¶ 115.

Reddy contends that this language is irrelevant because the superseding indictment does not allege that he ever met Sanchez or otherwise had any dealings with him. Doc. 70 at 7. Reddy then contends that the paragraphs are prejudicial because of: (1) their placement at the beginning of the superseding indictment; (2) their references to drug distribution and money laundering offenses, which are very different than the offenses with which Reddy is charged; (3) their implication that Reddy was associated with a person who has admitted to committing a health care fraud offense akin to the crime with which Reddy is charged; and (4) their implication that Sanchez operated a "pill mill"—a term commonly used by journalists when discussing the opioid epidemic. Id. at 7–8. Based on the paragraphs' minimal relevance to Reddy and prejudicial nature, Reddy contends that the Court should strike them. Id. at 8.

### 2.      Indictment Surplusage Principles

Rule 7(d) of the Federal Rules of Criminal Procedure provides, "Upon a defendant's motion, the court may strike surplusage from the indictment or information." Fed. R. Crim. P. 7(d). The Eleventh Circuit has instructed district courts to grant Rule 7(d) motions sparingly, stating, "A motion to strike surplusage from an indictment should not be granted unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial. This is a most exacting standard." United States v. Awan, 966 F.2d 1415, 1426 (11th Cir. 1992) (quotations and alterations omitted). "Therefore, it is proper to reserve ruling on a motion to strike surplusage until the trial court has heard the evidence that will establish the relevance of the allegedly surplus language . . . ." Id.

### 3. The Court Should Deny or Reserve Ruling on Reddy's Motion

The government acknowledges that the paragraphs to which Reddy refers have little to no relevance as to the remaining charge against Reddy. Moreover, the government recognizes the potentially prejudicial nature of those paragraphs—although the government is not as certain as Reddy that they are, in fact, prejudicial.

However, the government opposes the motion because the paragraphs are relevant as to the charges in counts 1 through 15—the counts containing allegations about Henry's business relationship with Sanchez. Moreover, the information about Sanchez's criminal convictions is not necessarily prejudicial as to Henry. Quite the opposite, the government expects that, should Sanchez testify for the government, Henry will cross-examine Sanchez about those convictions in an effort to impeach Sanchez's testimony. Because of the paragraphs' relevance as to Henry, the government asks the Court to refrain from striking the paragraphs.

The government suggests that the Court could strike the portion of paragraph 115 incorporating paragraphs 1 through 3 by reference into count 16 so that only paragraphs 4 through 114 are incorporated by reference. Doing so should alleviate any concerns Reddy has about the jury convicting him on the basis of some association with Sanchez. Alternatively, the government suggests that the Court reserve ruling on this motion until after hearing the government's evidence and any testimony elicited during the cross-examination of Sanchez. See id.

### IV. CONCLUSION

Based on the foregoing, the government asks that the Court: (1) deny Henry's motion to dismiss the superseding indictment, Doc. 72; (2) deny Henry's motion for a bill of particulars, Doc. 73; (3) deny Henry's motion for the disclosure of specific documents the government

intends to introduce at trial, Doc. 67; (4) deny Reddy's motion to dismiss for improper joinder or in the alternative sever for trial, Doc. 66; (5) deny as moot Reddy's motion for a bill of particulars, Doc. 68; (6) deny as moot Reddy's motion to dismiss counts 16 and 18 as multiplicious [sic], Doc. 69; and (7) deny or reserve ruling on Reddy's motion to strike surplusage from the superseding indictment, Doc. 70.

Respectfully submitted this 21st day of September, 2018.

<div style="margin-left:50%">

LOUIS V. FRANKLIN, SR.
UNITED STATES ATTORNEY

/s/Jonathan S. Ross
Jonathan S. Ross
Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
E-mail: jonathan.ross@usdoj.gov

/s/ Megan A. Kirkpatrick
Megan A. Kirkpatrick
Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
E-mail: megan.kirkpatrick@usdoj.gov

</div>

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA    )
                             )
       v.                )         CR. NO.   2:18-CR-249-WKW-WC
                             )
WILLIAM E. HENRY          )

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2018, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to all

attorneys of record.

Respectfully submitted,


/s/Jonathan S. Ross
Jonathan S. Ross
Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
E-mail: jonathan.ross@usdoj.gov

/s/ Megan A. Kirkpatrick
Megan A. Kirkpatrick
Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
E-mail: megan.kirkpatrick@usdoj.gov